IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JORGE REYES,<br>　　　　　Plaintiff,<br><br>vs<br><br>SUPERINTENDENT ROBERT GILMORE, et al.,<br>　　　　　Defendants. | Civil Action No. 18-746<br><br>Magistrate Judge Dodge |

## **MEMORANDUM OPINION**

Plaintiff Jorge Reyes, an inmate currently incarcerated at the State Correctional Institution at Fayette ("SCI Fayette"), who was previously incarcerated at the State Correctional Institution at Greene ("SCI Greene"), has brought this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants, SCI Greene Superintendent Robert Gilmore, Sergeant Oswald and Corrections Officer Lewis ("CO Lewis") arising out of an incident that occurred on July 7, 2017.

Currently pending before the Court for disposition is Defendants' motion for summary judgment. For the reasons that follow, the motion will be granted.

### I.　**Relevant Procedural History**

Plaintiff submitted a motion to proceed in forma pauperis ("IFP") on June 6, 2018, but the motion was deficient. He subsequently filed another motion which was granted, and his Complaint was filed on July 6, 2018. (ECF No. 6.) The parties have consented to jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).

On June 24, 2019, Defendants filed a motion for summary judgment (ECF No. 30). Although Plaintiff's response was due by July 25, 2019, he failed to file a response. This case was subsequently reassigned to the undersigned. On December 16, 2019, an order was entered (ECF No. 36) directing Plaintiff to respond to Defendants' motion for summary judgment by

January 17, 2020. Plaintiff was also notified in the order that if he did not respond by the deadline imposed, his action might be dismissed for failure to prosecute. Plaintiff has failed to respond in any way to Defendants' motion or the Court's December 16, 2019 order.

## II. Background Facts

Plaintiff alleges that on July 7, 2017, he was assigned to Bravo Block at SCI Greene and approached CO Lewis to ask for a shower before he went to work in the Dietary Department, but Lewis declined his request. (Compl. ¶¶ 8-9.) When Plaintiff renewed his request and CO Lewis did not respond, Plaintiff asked for a grievance form and was told "I'll bring it up to you later, I don't work for you!" (*Id.* ¶¶ 10-11.) Plaintiff then asked for the "block Sergeant" and CO Lewis stood up and yelled "go lock-up now!" (*Id.* ¶ 12.) Plaintiff states that he began to walk back to his cell, but CO Lewis started following him and eventually pushed him. (*Id.* ¶¶ 13-16.) CO Lewis then got on his radio and said "inmate assault on staff" and attempted to grab Plaintiff and take him to the floor but was not able to do so. He also attempted to knee Plaintiff, but could not do this either. (*Id.* ¶¶ 17-18.)

CO Lewis held Plaintiff until back-up arrived. The responding officers sprayed him with pepper spray and took him to the floor. He was placed in handcuffs and removed from the block, then "turned over and slammed head first onto the concrete." (*Id.* ¶¶ 18-19-21.) When he was picked up, he was made to walk backwards while the officer who held his head down made numerous threats of violence toward him. Two spit masks were put on him and an unnamed officer stepped on his right wrist, which made the handcuff dig into his skin. (*Id.* ¶¶ 22-24.)[1]

Sgt. Oswald is alleged to have witnessed this incident and to have failed to take action to prevent it in his role as CO Lewis's supervisor. (*Id.* ¶ 30.) Superintendent Gilmore is alleged to

---

[1] Plaintiff does not allege that Defendant Lewis engaged in any of the conduct that took place after back-up arrived.

have failed "to correct the misconduct/illegal conduct," and allowed it to continue, although Plaintiff does not allege that Superintendent Gilmore was personally involved in the incident or had contemporaneous knowledge about it. (*Id.* ¶ 31.)

Plaintiff does not allege any specific physical injury from the incident, but does reference "pain and suffering, physical and emotional distress" (*id.* ¶ 30), intimidation "at the sight of Correctional Officers whom [sic] wear black gloves (*id.* 29) and "not being able to trust a person in the capacity as a supervisory position" (*id.* ¶ 30). Plaintiff also contends that the misconduct reports he received will adversely affect his ability to obtain parole. (*Id.* ¶ 32.)

### III. Discussion

#### A. Standard of Review

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate if there are no genuine disputes as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court of Appeals has held that "where the movant bears the burden of proof at trial and the

3

motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." *National State Bank v. Federal Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir. 1992).

In following this directive, a court must take the facts in the light most favorable to the non-moving party and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 266 (3d Cir. 2005); *Doe v. County of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001). "A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff has failed to respond in any fashion to Defendants' motion for summary despite being given multiple extensions to do so. In addition, he has not advised the Court that he is unable to respond or sought any relief from the deadlines that were imposed. He was also advised that his failure to respond could lead to the dismissal of his action. Having been given ample opportunity, Plaintiff has failed to provide any response or information that would account for failure to oppose Defendants' motion.

"Under Rule 41(b), a district court has authority to dismiss an action *sua sponte* if a litigant fails to prosecute or to comply with a court order." *Qadr v. Overmeyer*, 642 F. App'x 100, 102 (3d Cir. Mar. 8, 2016) (*per curiam*) (citing Fed. R. Civ. P. 41(b)); *see also Adams v. Trustees of New Jersey Brewery Employees' Pension Trust Fund*, 29 F.3d 863, 871 (3d Cir. 1994) ("The Supreme Court affirmed, stating that a court could dismiss *sua sponte* under Rule 41(b).")

Based on this authority, the Court could dismiss this action *sua sponte* because of

Plaintiff's failure to prosecute his action or comply with court-imposed deadlines. Nonetheless, given Plaintiff's *pro se* status, it will proceed to consider the merits of Defendants' motion.

B. <u>Failure to Exhaust Administrative Remedies</u>

The Prison Litigation Reform Act ("PLRA") provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997(e)(a). The Supreme Court has held that prisoners must exhaust their administrative remedies prior to bringing suit, even if the state does not provide the kind of remedy they seek or are about excessive force. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Booth v. Churner*, 532 U.S. 731, 739 (2001); *Nyhuis v. Reno*, 204 F.3d 65 (3d Cir. 2000). The Court has further held that the PLRA requires "proper exhaustion," that is, exhaustion as set forth in the procedures described, in a timely manner and so on. *Woodford v. Ngo*, 548 U.S. 81 (2006). Whether a prisoner has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts. *Small v. Camden County*, 728 F.3d 265, 269 (3d Cir. 2013).

Pursuant to Administrative Directive DC-ADM 804 of the Department of Corrections ("DOC"), the grievance process consists of three steps: (1) file an initial grievance; (2) file an appeal to the Superintendent; and (3) file an appeal for final review to the Secretary's Office of Inmate Grievances and Appeals. 37 Pa. Code § 93.9. To initiate the process, a prisoner files a DC-ADM 804, Part 1 grievance form. *Id.* The Court of Appeals has indicated that DC-ADM 804 is an adequate administrative remedy for purposes of the PLRA. *Booth v. Churner*, 206 F.3d 289, 292 n.2 (3d Cir. 2000).

Plaintiff alleges in a heading in his Complaint that he exhausted "legal remedies."

5

However, the allegations of the Complaint fail to support the requisite exhaustion. Indeed, Plaintiff does not allege that he actually filed *any* grievances about the July 7, 2017 incident at issue. By contrast, Defendants have submitted the Declaration of Rhonda House, Superintendent's Assistant II at SCI Fayette since 2007 (ECF No. 33 Ex. B.) Ms. House states that on August 23, 2018, she reviewed all grievances filed by Plaintiff (see ECF No. 33 Ex. A), and that none of his grievances relate to the July 7, 2017 incident in question and none of his grievances were appealed (in fact, two were withdrawn). She further avers that she completed another review of his grievance history on June 19, 2019 and found the same result. Finally, she did not take any action to cover up or hide the true nature of Plaintiff's grievance history. (House Decl. ¶¶ 3-10.)

Therefore, it is uncontroverted that Plaintiff did not file a grievance with respect to the incident that forms the basis for the Complaint.

Rather, the sole allegation in the Complaint about exhaustion relates to an appeal from a misconduct that was issued to Plaintiff regarding the July 7, 2017 incident. Plaintiff alleges that he "filed Misconduct Appeal dated Tuesday 18th day of July, 2017 to Misconduct No. C039152." (Compl. ¶ 27.) He further indicates that he:

> proceeded to appeal to the Facility Manager dated 28th day of July, 2017 by the not providing of said appellate response Reyes was left with no appellate remedies left to use due to the failure of the Commonwealth of Pennsylvania, Department of Corrections to provide to your Plaintiff the required appellate responses within the timeframes that are set forth by policy, therefore there exists no appellate remedies left for Reyes to exhaust.

*Id.*

The uncontroverted evidence of record reflects that Plaintiff was issued four misconducts

as a result of the July 7, 2017 incident. (ECF No. 33 Exs. C, D, E, and F.)[2] With respect to misconduct No. C039152 referenced in the Complaint, Plaintiff pleaded guilty to using inappropriate language and was found guilty of an assault. (*Id.* Ex. D.) While Exhibit D reflects Plaintiff's version of the events and is relatively consistent with the allegations of the Complaint, it is a response to a misconduct charge, not a grievance. It is not the DC-ADM 804, Part 1 grievance form, it does not assert a claim for excessive force and does not request any relief, other than a not guilty result regarding the other misconduct charges to which he did not plead guilty.[3]

Thus, because Plaintiff failed to exhaust his administrative remedies, there are no genuine issues of material fact that preclude summary judgment in Defendants' favor.

However, as explained below, even if the C039152 form somehow could be construed as a grievance and Plaintiff's allegation in the Complaint created a genuine issue of material fact regarding exhaustion, Plaintiff's claims still fail as a matter of law.

C. Claims Against Defendants Lewis and Oswald

Plaintiff alleges that CO Lewis yelled at him, pushed him for no reason, attempted to take him to the ground and attempted to knee him.[4] Regarding Sgt. Oswald, Plaintiff asserts that he

---

[2] Two of the misconducts were dismissed for procedural defects. (*Id.* Exs. C, F.) In a third, No. C039154, he was found guilty of disobeying an order to stop resisting CO Lewis. (*Id.* Ex. E.) Defendants note Plaintiff's admission that he did not appeal Misconduct No. C039154 (ECF No. 32 ¶ 19) (citing Compl. ¶ 27).

[3] Even if the C039152 could be construed as a grievance, Defendants have submitted the Declaration of Chief Hearing Examiner Zachary Moslak (ECF No. 33 Ex. G), who avers that on or about June 24, 2019, he investigated Plaintiff's misconduct appeal history and the electronic facility records and internal record at central office reveal that he did not appeal Misconduct No. C039152. Mr. Moslak also states that Plaintiff never appealed a misconduct to the final level of review. (Moslak Decl. ¶¶ 2-4.)

[4] He also alleges that other unnamed officers sprayed him with pepper spray, pushed his head onto the concrete floor, made threats of violence and stepped on his hand, but those officers are not named as defendants in this action.

observed CO Lewis's illegal conduct and did nothing to correct it. Defendants argue that these allegations fail to state a claim under the Eighth Amendment of the Constitution. They are correct.

The Eighth Amendment to the Constitution prohibits the imposition of "cruel and unusual punishments." U.S. Const., amend. VIII. However, as the Supreme Court has recognized, "[t]hat is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (citations omitted).

As Defendants note, the pivotal inquiry in an excessive force case is whether force was applied in a good-faith effort to maintain or restore discipline or was done with malicious intent to cause harm. *Wilkins, supra.* The factors to be considered in making this determination are the need for the use of force, the relationship between the need and the amount of force used, the extent of the injury, the extent of the threat to the safety of others and any efforts made to temper the severity of the forceful response. *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) (citation omitted).

The allegations in this case regarding the use of force do not rise to the level of cruel and unusual punishment. At most, CO Lewis pushed Plaintiff, grabbed him, unsuccessfully attempted to knee him and take him to the floor and then held him until back-up arrived. Moreover, the record demonstrates that Plaintiff was issued four misconducts arising out of this

incident, pleaded guilty to using inappropriate language and was found guilty of assault and failure to obey an order.[5] Therefore, the need for and the use of some force to attempt to restrain Plaintiff was reasonable in this situation and there is no basis in the record for concluding that the amount of force used by CO Lewis was unreasonable under the circumstances. Moreover, Plaintiff has not alleged that he sustained any serious injuries as a result of this incident.

Finally, there are no allegations in the Complaint that Sgt. Oswald engaged in the use of excessive force or engaged in conduct that represents cruel and unusual punishment. Given the failure to demonstrate that excessive force was used, Sgt. Oswald's alleged failure to intervene does not rise to the level of a constitutional violation.

Thus, Plaintiff's claim against these Defendants fails as a matter of law.

Claim against Superintendent Gilmore

Plaintiff asserts an Eighth Amendment claim against Superintendent Gilmore for "failure to correct the misconduct/illegal conduct, and by allowing the continuation of the misconduct/illegal conduct of Lewis and Sgt. Oswald." (Compl. ¶ 31.) He further alleges that Superintendent Gilmore refused "to provide the correct supervisory direction to the Officer's [sic] of SCI-GREENE and the failure to make sure that each and every inmate that has been confined into his custody is free from assault by Correctional Officers and/or inmates." (*Id.*)

Defendants contend that Plaintiff has failed to allege any personal involvement by Superintendent Gilmore or contemporaneous knowledge of the incident. Instead, Plaintiff merely

---

[5] Plaintiff quotes from the misconduct report that CO Lewis placed his hand on Plaintiff's chest to create distance between them and argues that he never touched CO Lewis (Compl. ¶ 33), but the report also stated that Plaintiff took an aggressive stance and that CO Lewis "recognized the physical indicators of an imminent assault." (ECF No. 33 Ex. F.) Under Pennsylvania law, "it is axiomatic that simple assault does not require a victim to suffer actual bodily injury. The attempt to inflict bodily injury may be sufficient." *Commonwealth v. Polston*, 616 A.2d 669, 679 (Pa. Super. 1992); see 18 Pa. C.S. § 2701(a)(1).

alleges that Defendant Gilmore failed to correct Defendants' conduct.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). "The Third Circuit has held that a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Boykins v. Ambridge Area Sch. Dist.*, 621 F2d 75, 80 (3d Cir. 1980)).

Superintendent Gilmore's role as superintendent of SCI Greene does not, in and of itself, establish any personal involvement with the matters at issue. Plaintiff's Complaint fails to allege that Superintendent Gilmore was personally involved in the July 7, 2017 incident or that he had contemporaneous personal knowledge of what occurred and there is no evidence of record of his personal involvement or knowledge. This is fatal to Plaintiff's claim against him. Therefore, as it is unconverted that Superintendent Gilmore lacked any personal knowledge or involvement in the July 7, 2017 incident, he is entitled to judgment in his favor as a matter of law.

### III. Conclusion

For the reasons cited above, Defendants' motion for summary judgment will be granted. An appropriate order follows.

Dated: February 13, 2020

BY THE COURT:

PATRICIA L. DODGE
United States Magistrate Judge